JOURNAL ENTRY AND OPINION
{¶ 1} Karen Clinton appeals from an order of the trial court which granted MetroHealth Medical Center's motion for summary judgment and denied her motion for partial summary judgment. She contends that because there was conflicting evidence regarding the destruction of public records, summary judgment was inappropriate. She conversely claims that she presented sufficient evidence on the issue of the destruction of public records and that the court should have granted her motion for partial summary judgment. We affirm.
 {¶ 2} The record reveals that on October 7, 1999, staff and patients at MetroHealth Medical Center ("MetroHealth"), Core Building, began complaining of headaches and nausea. When hospital staff investigated, they found that smoke was emanating from a chimney where the on-site morgue incinerator discharges. Further investigation determined that the smoke was generated from an incomplete combustion of products, namely, test animal corpses that had been placed in the incinerator.
 {¶ 3} At the time of the incident, Clinton was working in the Coronary Intensive Care Unit of MetroHealth as a customer care partner. She had worked at MetroHealth since June 1995, however, shortly after the incinerator incident, Clinton began complaining of exposure to toxic fumes as a result of the incinerator fire. Thirteen months later, Clinton was diagnosed with chronic fatigue syndrome as derived from the Epstein Barr virus. She claimed she was exposed to the virus while it was being researched for its use as a means of treating certain types of cancer tumors at the Animal Research Center located at the Rammelkamp Research lab at MetroHealth.
 {¶ 4} In December 2001, Clinton filed a law suit in Cuyahoga County against the Bureau of Workers' Compensation ("BWC")[1] for claims related to injuries she claimed to have suffered as a result of the October 7, 1999 incomplete burn of the incinerator's contents. Clinton's lawsuit against the BWC is not the subject of this appeal. After the case against the BWC was tried and resolved, Clinton's attorney sent two letters to MetroHealth requesting records relating to the incomplete burn in the incinerator. Both letters, sent December 9, 2003 and February 17, 2004, respectively, referenced Clinton's BWC claim number. Apparently believing these requests to be discovery requests for the production of documents relating to the previously filed law suit and/or administrative proceedings, MetroHealth forwarded the letters on to its counsel.
 {¶ 5} On May 14, 2005, and without receiving the requested documents, Clinton filed a mandamus action seeking to compel MetroHealth to disclose the requested materials in compliance with Ohio's public records statute, R.C. 149.43. The parties then respectively moved for summary judgment. MetroHealth asserted that no genuine issues of material fact remained and claimed that it had submitted all the requested documents, making the mandamus action moot. Clinton then moved for partial summary judgment, asserting that MetroHealth had originally possessed some of the requested public records documents but had destroyed them during building renovations. She reserved issues of damages and attorney fees for trial.
 {¶ 6} The trial court denied Clinton's motion for partial summary judgment and granted MetroHealth's two motions for summary judgment. Clinton appeals from this order and sets forth a single assignment of error which states:
"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED SUMMARY JUDGMENT TO RESPONDENT-APPELLEE, METROHEALTH SYSTEMS, IN THE FACE OF CONFLICTING EVIDENCE REGARDING WHETHER METROHEALTH WRONGFULLY WITHHELD OR DESTROYED PUBLIC RECORDS, AND WHETHER REALTOR-APPELLANT, CLINTON, WAS ENTITLED TO ATTORNEY FEES. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO GRANT REALTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DESTRUCTION OF PUBLIC RECORDS AND ATTORNEY FEES."
 {¶ 7} Clinton requests that this court remand this case to the trial court to address the remaining factual issues and to hold a hearing on damages and attorney fees. Specifically, Clinton asserts that MetroHealth failed to produce copies of the morgue incinerator EPA logs from April 1, 1999 to October 10, 1999, as requested in her December 9, 2003 letter. Clinton also claims, without outlining in specificity, that the disclosure of "items two and three of the second letter" allowed her to learn enough additional information to create genuine issues of material fact regarding how much data MetroHealth possessed.
 {¶ 8} In reviewing an award of summary judgment, this court must apply a de novo standard of review. Cole v. AmericanIndustry Resources Corp. (1998), 128 Ohio App.3d 546, 552. We apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Fleming,68 Ohio St.3d 509, 511, 1994-Ohio-172. "A `material fact' depends on the substantive law of the claim being litigated." Hoyt, Inc. v.Gordon Assocs., Inc. (1995), 104 Ohio App.3d 598, 603, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248.
 {¶ 9} Further, mandamus is the appropriate remedy to seek compliance with R.C. 149.43, Ohio's Public Records Act. State exrel. Cincinnati Enquirer v. Winkler, 101 Ohio St.3d 382,2004-Ohio-1581. R.C. 149.43 "`is construed liberally in favor of broad access, [and] any doubt is resolved in favor of disclosure of public records.'" Gilbert v. Summit Cty.,104 Ohio St.3d 660, 2004-Ohio-7108, quoting State ex rel. Cincinnati Enquirerv. Hamilton Cty., 75 Ohio St.3d 374, 376, 1996-Ohio-214.
 {¶ 10} Clinton contends that MetroHealth failed to produce copies of the morgue incinerator EPA logs from April 1, 1999 to October 10, 1999, as requested in the first paragraph of her December 9, 2003 letter. Without citing any portions of deposition testimony with specificity, Clinton vaguely directs this court to the deposition testimony of Thomas Rao, Director of Plant Engineering at MetroHealth, and Ken Brickman, Mortality Specialist at MetroHealth. Clinton asserts that Rao and Brickman's testimony supports her contention that the requested incinerator log sheets existed and were maintained by MetroHealth, but that MetroHealth destroyed the documents used for their compilation during building renovations in 2001. She then refers this court to Realtor's Exhibit F, the Incinerator Activity Report, and Realtor's Exhibit H, a handwritten incinerator log that contains six entries of items that were incinerated on April 6, 1993.
 {¶ 11} R.C. 149.43(B)(1) requires a public office to make its public records available for inspection and, upon request, to make copies available at cost within a reasonable amount of time. If the office fails or refuses to make the public records available, R.C. 149.43(C) provides:
"If a person allegedly is aggrieved by the failure of a public office to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section, or if a person who has requested a copy of a public record allegedly is aggrieved by the failure of a public office or the person responsible for the public record to make a copy available to the person allegedly aggrieved in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section and that awards reasonable attorney's fees to the person that instituted the mandamus action. The mandamus action may be commenced in the court of common pleas of the county in which division (B) of this section allegedly was not complied with, in the supreme court pursuant to its original jurisdiction under Section 2 of Article IV, Ohio Constitution, or in the court of appeals for the appellate district in which division (B) of this section allegedly was not complied with pursuant to its original jurisdiction under Section 3 of Article IV, Ohio Constitution."
 {¶ 12} "Records" is defined in R.C. 149.011(G) as "any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state * * * which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." Using the language of this provision and following the guidance of the Ohio Supreme Court, this court must be mindful of the statute's plain language and of the legislative intent behind the statute.State v. S.R. (1992), 63 Ohio St.3d 590, 594. We must then give effect to the "usual, normal and customary meaning" of a statute's words. State ex rel. Pennington v. Gundler,75 Ohio St.3d 171, 173, 1996-Ohio-161.
 {¶ 13} We note in particular the statute's use of the phrase "any document," which has been found to encompass all documents that fit within the statute's broad definition, regardless of their "form or characteristic." State ex rel. Cincinnati Post v.Schweikert (1988), 38 Ohio St.3d 170, 172-173. Unless otherwise exempted or excepted, almost all documents memorializing the activities of a public office can satisfy the definition of "record." State ex rel. Beacon Journal Publishing Co. v. Bond,98 Ohio St.3d 146, 2002-Ohio-7117. Further, any material upon which a public office could rely in such determinations can reasonably be classified as a "record." Kish v. City of Akron
___ Ohio St.3d ___, 2006-Ohio-1244, citing State ex rel Mazzaro v.Ferguson (1990), 49 Ohio St.3d 37, 40. The document need not be in final form to meet the statutory definition of "record."State ex rel. Cincinnati Enquirer, Div. Of Gannett SatelliteInformation Network, Inc. v. Dupuis, 98 Ohio St.3d 126,2002-Ohio-7041. Turning now to R.C. 149.351(A), the statute prohibits destruction of or damage to public records, and R.C.149.351(B) provides a remedy to "any person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record" or by the threat of such removal or destruction. The aggrieved person may file a civil action for injunctive relief or a civil action for forfeiture of $1,000 for each violation, or both. Further, an award of reasonable attorney fees will accompany either judgment. R.C.149.351(B)(1) and (2).
 {¶ 14} In her December 9, 2003 letter to MetroHealth, Clinton requested "[c]opies of the morgue incinerator log from April 1, 1999 to October 10, 1999. The documents should include what objects were burned or destroyed and what chemicals or process was used in the burning or destroying of the objects." (Letter at paragraph 1.) In response, MetroHealth produced copies of the "Incinerator Activity Report" from October 1, 1999 through December 31, 1999, (Realtor's Exhibit F), a four-page handwritten incinerator log (Realtor's Exhibit G), and a more detailed Incinerator Activity Report from the same time period (Rao Exhibit 1). During his deposition, Rao explained that the Incinerator Activity Report recorded the time of day that the incinerator ran, the weight of material that was loaded into the incinerator, and the temperature that was reached in the secondary chamber. (Deposition of Thomas Rao at 11-13.) Rao further testified that the reports were compiled from daily logs kept by the person in the pathology department, also called a diener, who operated the incinerator. Rao would use the information provided by the diener to compile the Incinerator Activity Report and then return the logs and corresponding temperature charts to the pathology department for storage. Metrohealth Mortality Specialist, Ken Brickman, testified that the daily incinerator logs and charts were mistakenly discarded in "probably 2001" by an outside cleaning service. (Brickman Deposition at 16.)
 {¶ 15} Despite the information contained in the provided logs, Clinton nonetheless contended, and still contends on appeal, that the daily incinerator logs prepared by the pathology department and used by Rao in making his summary report, contained more detailed information about exactly what materials were being burned and how well they were burned in MetroHealth's incinerator. If, and we emphasize the tenacity of this assumption, additional logs existed that were used to produce a final report of incinerator activity, these additional reports would qualify as public records and would, therefore, be subject to disclosure in accord with Kish and Dupuis, supra.
 {¶ 16} However, and as it relates to the supposed "detailed" logs from the pathology department, during John Appeldorn's deposition he testified that he was aware of no document that would have explained the type of objects burned in the incinerator on the day of the incident. (Deposition of John Appeldorn at 40.) Appeldorn then suggested that if such a document did exist, only Rao would know otherwise. Rao's deposition confirmed Appeldorn's testimony when Rao stated that it was not normal operation for an incinerator operator to write down the contents of the bag that was being burned. (Deposition of Thomas Rao at 22.)
 {¶ 17} Further, MetroHealth operated the incinerator under a Title V permit (Rao Exhibit 3), which required MetroHealth to submit quarterly Incinerator Activity Reports to the Division of Air Pollution Control for the City of Cleveland, and in turn required MetroHealth to retain the documents for three years. (Deposition of Thomas Rao at 49-52.) Rao Exhibit 4, an application for the Pathological Incinerator entitled "Special Terms and Conditions" paragraph "F" supports the assertion of a three-year retention and requires that,
"Daily records shall be maintained which list the following information for incineration:
(a) Operation times: start-up and shutdown,
(b) Pounds of hospital waste (type 4),
(c) Temperature of secondary combustion chamber.
These daily records shall be maintained in the company's files for three years and shall [sic] made available to any authorized representative of the Ohio EPA during normal business hours."
 {¶ 18} Rao also testified that MetroHealth has a record retention policy for some records for as long as five years, including Exhibit F, the Incinerator Activity Report, which was in fact provided to Clinton. (Deposition of Thomas Rao at 17-18.) However, and even assuming that the pathology log reports that were used in Rao's compilations were retained for the required three years, MetroHealth was then only required to keep the documents through December 2002. Clinton did not submit a public records request until December 2003, making the disposition of the logs moot. Therefore, not only does the record fail to direct this Court on the tenuous issue of whether additional documentation existed, the record also reflects that since Clinton's request was untimely, MetroHealth cannot be penalized for any alleged destruction.
 {¶ 19} Moreover, and further complicating the matter, the timing of the alleged destruction of documents is "probable" at best. Brickman's limited testimony on the matter of the accidental disposal of records related to Realtor's Exhibit H, a handwritten incinerator log, and Rao Exhibit 2, a circular chart used to chart temperature and time. (Deposition of Kenneth Brickman at 15.) Brickman testified that he could not supply a date of disposal for these documents, only offering a guess that, "I would have to say probably 2001." (Deposition of Kenneth Brickman at 16.)
 {¶ 20} Clinton also fails to offer this court any additional guidance on the documentary destruction. When asked to identify with particularity each and every record that respondent destroyed, lost or misplaced in violation of R.C. 149.351, Clinton responded that the answer "cannot be determined at this point in time." (Realtor's Answers to Respondent's First Set of interrogatories, No. 30.) While she reserved the right to supplement later, Clinton never filed any further supplementation.
 {¶ 21} We reiterate, however, that the Ohio Supreme Court has found that R.C. 149.43 is to be construed liberally in favor of broad access. Gilbert, supra. As recently held in Kish,
supra, "our legislators, executives, and judges mandated and monitored the careful creation and preservation of public records (citation omitted.), and codified the people's right to access those records. Such statutes, including those comprising R.C. Chapter 149, reinforce the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor. (Citations omitted.)" We are particularly mindful of R.C. 149.351 which, as previously stated, proscribes the destruction, mutilation, removal, damaging, transfer or disposal of public records. R.C. 149.351(B)(2). While MetroHealth was only mandated to retain the incinerator logs and temperature charts, the information used to compile those reports, must be retained by the keeper, or in this case, MetroHealth. If a compilation of documents is a separate public record, the documents underlying the compilation must also be public records. Kish, supra. MetroHealth was therefore proscribed from destroying the documents or even inadvertently disposing of such documents.
 {¶ 22} The difficulty in the case before us is that it cannot be ascertained from the record whether documents were kept that detailed the functions and operations of the incinerator, or if detailed logs stated what materials were burned, and how they were burned. Again, if such records were in fact, kept, than they would fall under the purview of a "public record," and disclosure would be mandatory under R.C. 149.43(A)(1). However, Clinton has failed to sufficiently justify her assumption that the logs that were inadvertently removed from the pathology department contained detailed information about what materials were burned and how well they burned. The record also lacks a clear indication that the logs were "inadvertently" destroyed before the mandated time frame expired.
 {¶ 23} For these reasons, this Court is bound by the determination that MetroHealth cannot now be penalized for failing to produce such documents. We note however, that but for the cleaning company inadvertently removing and/or destroying the documents that were, presumably, unknown to the hospital, and but for the untimeliness of Clinton's request, this bizarre set of facts might have led to a different outcome.
 {¶ 24} Finally, Clinton asserts that she is entitled to attorney fees. Clinton never raised this error at the trial court and, therefore, we are barred from reviewing this issue on appeal.
 {¶ 25} For these reasons, we find that Clinton's sole assignment of error lacks merit and affirm the decision of the trial court.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J. concurs.
 Dyke, A.J., Concurs in Judgment Only..
[1] Case number CV-01-457001.