[Cite as *State ex rel. Clinton v. MetroHealth Sys.*, 2014-Ohio-4469.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100590**

## STATE EX REL. KAREN CLINTON

RELATOR-APPELLANT

vs.

## METROHEALTH SYSTEM

RESPONDENT-APPELLEE

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-733691

**BEFORE:** Jones, P.J., Rocco, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** October 9, 2014

**ATTORNEYS FOR APPELLANT**

Terry Jennrich
Geraci & Laperna
1370 Ontario Street
Suite 510
Cleveland, Ohio 44113

Warner Mendenhall
190 North Union Street
Suite 201
Akron, Ohio 44304


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Barbara R. Marburger
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Relator-appellant, Karen Clinton, appeals from the trial court's (1) June 2013 decision denying her motion for partial summary judgment and granting respondent-appellee MetroHealth System's motion for partial summary judgment, and (2) the October 2013 decision granting summary judgment in favor of MetroHealth on the remaining issues. We affirm.

## I. Procedural History

**This Case**

{¶2} Clinton previously worked at MetroHealth and alleged she became ill after an October 7, 1999 incident at the hospital where smoke emanated from a chimney connected to the hospital's on-site morgue incinerator, but the items in the incinerator (test animal corpses) had not completely combusted. Clinton alleged that she became disabled because of the hazardous fumes she breathed from the hospital's malfunctioning morgue incinerator.

{¶3} In April 2010, Clinton made a 30-part public documents request of MetroHealth. In August 2010, she filed this mandamus action, seeking an order compelling MetroHealth to comply with her request. Clinton also sought attorney fees, and statutory damages under R.C. 149.43. Additionally, she made a claim for forfeiture fees for any documents that MetroHealth allegedly destroyed or improperly disposed of under R.C. 149.351.

{¶4} Both parties filed motions for summary judgment. The trial court denied

Clinton's motion for partial summary judgment. It granted MetroHealth's motion, thereby dismissing Counts 1 and 2 of the amended complaint as they related to Clinton's request numbers 1, 2, 5, 7, 8, and 9. MetroHealth filed a motion for summary judgment as to the remaining issues that the trial court granted.

{¶5} In her sole assignment of error, Clinton contends that the trial court "erred in granting summary judgment to MetroHealth when the evidence showed MetroHealth wrongfully delayed production of, withheld, and destroyed public records."

**Prior Litigation[1]**

*2001 Workers' Compensation Case*

{¶6} In December 2001, Clinton filed a workers' compensation case relative to injuries she alleged she suffered because of the incinerator at MetroHealth. After the case was resolved, Clinton, through her attorney, twice requested (once in December 2003, and once in February 2004) of MetroHealth records relating to the incinerator. The requests referenced Clinton's workers' compensation claim number. "Apparently believing these requests to be discovery requests for the production of documents relating to the previously filed lawsuit and/or administrative proceedings, MetroHealth forwarded the letters on to its counsel." *Clinton v. MetroHealth*, 8th Dist. Cuyahoga No. 86886, 2006-Ohio-3582, ¶ 4 ("*Clinton I*").

*2005 Mandamus Action*

---

[1]Information regarding the prior litigation is elicited from this court's opinion in *Clinton v. MetroHealth*, 8th Dist. Cuyahoga No. 86886, 2006-Ohio-3582.

{¶7} In May 2005, Clinton filed a mandamus action seeking to compel MetroHealth to disclose the materials she requested in December 2003 and February 2004. Both parties moved for summary judgment. MetroHealth contended in its motion that the case was moot because it had submitted all the materials Clinton had requested. Clinton's summary judgment motion was partial,[2] and she contended that the hospital had originally possessed some of the requested records, but had destroyed them during building renovations. The trial court granted MetroHealth's motion, and denied Clinton's motion.

{¶8} Clinton appealed, contending that the hospital failed to produce copies of the morgue incinerator Environmental Protection Agency ("EPA") logs from April 1, 1999 through October 10, 1999 that were requested in her December 2003 request. In support of her claim, Clinton relied on the deposition testimony of two MetroHealth employees. Specifically, Clinton claimed that the employees' testimony established that the requested log sheets existed and were maintained by the hospital, but the documents used for their compilation were destroyed by the hospital in 2001 during building renovations.

{¶9} This court found Clinton's reference to the employees' deposition testimony vague and unsupported by specific testimony. *Clinton I* at ¶ 10. Upon review of the depositions, this court found that it was not within the hospital's operating procedure to document the specifics that Clinton sought. This court further found that the incinerator was operated under a "Title V" permit, which required a three-year retention period. Thus, this court held that, "not only does the record fail to direct this Court on the tenuous

---

[2]Clinton reserved the issues of damages and attorney fees for trial.

issue of whether additional documentation existed, the record also reflects that since Clinton's request was untimely, MetroHealth cannot be penalized for any alleged destruction." *Id.* at ¶ 18.

**Other Document Request**

{¶10} In January 2007, Clinton also made a request for 21 documents from the hospital. Complaint, ¶ 6. According to Clinton, the hospital partially, but not fully, complied. *Id.*

## II. Law and Analysis

{¶11} The Supreme Court of Ohio has set forth three requirements that must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29, 451 N.E.2d 225 (1983).

{¶12} A motion for summary judgment requires the moving party to set forth the legal and factual basis supporting the motion. To do so, the moving party must identify portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Accordingly, any party moving for summary judgment must satisfy a three-prong inquiry showing: (1) that there is no genuine issue as to any material facts; (2) that the parties are entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against whom the motion for summary judgment is

made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶13} The purpose of R.C. 149.43, Ohio's Public Records Act, "is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro*, 80 Ohio St.3d 261, 264, 685 N.E.2d 1223 (1997), citing *State ex rel. WHIO-TV-7 v. Lowe*, 77 Ohio St.3d 350, 355, 673 N.E.2d 1360 (1997). Scrutiny of public records allows citizens to evaluate the rationale behind government decisions so government officials can be held accountable. *White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416, 420, 667 N.E.2d 1223 (1996).

{¶14} The appropriate remedy to compel compliance with R.C. 149.43 is mandamus. *State ex rel. Physicians Commt. for Responsible Medicine v. Bd. of Trustees of Ohio St. Univ.*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174. R.C. 149.43 must also be construed liberally in favor of broad access, and any doubt must be resolved in favor of disclosure of public records. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996). In her brief, Clinton cites the following requested materials as being in issue on appeal.[3]

*No. 1: Incinerator Logs and Daily Heat Charts*

{¶15} Clinton sought the hospital's incinerator logs from October 1996 through

---

[3] The records request in this case "duplicates the 2007 request for most of the first 21 items but adds new document requests in Items No. 22-30." Complaint, ¶ 7.

March 1999, and November 1999 through March 2001. Clinton also sought MetroHealth's daily heat charts from October 1996 through March 2001. According to Clinton, the hospital admitted that they destroyed the charts and the accompanying incinerator logs.

*No. 2: Incident Reports*

{¶16} Clinton sought reports regarding any "fumes, fires, or ventilation incidents related to incomplete burns of medical waste in the pathological incinerator between the dates of October 1, 1996 through October 31, 2001 * * *."

*No. 5: Animal Carcasses*

{¶17} This request sought records pertaining to the hospital's Rammelkamp Animal Research Center. Specifically, Clinton sought records documenting the offsite incineration of animal carcasses during the period dating January 1, 1996 through April 1, 2001, when the hospital's incinerator was shut down.

{¶18} MetroHealth denied the existence of any such records, but Clinton maintains that there is "no dispute that at least one offsite contractor was contracted to dispose of animal wastes. If so, then many more records such as the records that were provided in discovery should have been generated."

*No. 7: Environment Evaluations*

{¶19} MetroHealth produced some documents in response to this request, but withheld documents it deemed "not public records." Based on the May 24, 2011 minutes of the hospital's board of trustees meeting, the hospital sends these reports to various

governmental agencies. As such, Clinton contends that the hospital should produce these materials "at least for an *in camera* review by this Court as to whether or not they are exempt records." (Emphasis sic.)

*No. 8: Employees' Symptoms*

{¶20} Under this request, Clinton sought "documentation of work related injuries and diseases, at least with employee names redacted, so that [the hospital's] employees can ascertain the extent of their exposure."

*No. 9: Toxic Substance Monitoring*

{¶21} Clinton requested documents relating to the "measurement of dioxin levels, chromium, and other toxic and hazardous substances that should have been measured in the pathological morgue incinerator room, the core buildings, pathology labs, and the tower buildings between the dates of January 1, 1996 through December 31, 2001."

{¶22} The hospital stated that no such documentation existed. Clinton contends that the hospital's contention "appears to be false since MetroHealth's incinerator operating permit required monitoring toxic substances and MetroHealth requested a proposal to monitor toxic substances."

*No. 10: Stack Test Records*

{¶23} In this request, Clinton sought stack test records for 1996 and 1999. The hospital stated that it had a five-year retention period for such records, and that it did not have the records for 1996 or 1999. Clinton contends that the assertion of a five-year retaining period is "false"; the records must be maintained "indefinitely." Clinton further

contends that regardless of MetroHealth's claim that it did not have records for 1996 or 1999, it ignored her request for the December 19, 2000 stack report, which Clinton claimed the hospital acknowledged in the report that the stack was "damaged and would require extensive repairs." According to Clinton, she spoke to the owner of the company that conducted the testing on the stack.

{¶24} Clinton further maintains that the hospital did not comply with her request for materials documenting routine maintenance on the incinerator from January 1, 1997 through January 31, 2001. Clinton contends that she knows such materials exist because she has some, but not all, of them.

*No. 11: Incinerator Ash Records*

{¶25} Clinton sought records documenting the ash removal or animal carcass removal from the incinerator, which Clinton contends the hospital was required to maintain under its operating permit.

{¶26} The hospital contended that it did not document such removal and had no such records.

*No. 13: Incinerator Maintenance Records*

{¶27} Clinton contends that the hospital did not produce, as she had requested, maintenance and repair records for the incinerator for the years 1993-1996, 1998, and 2001. According to Clinton, such records were maintained under a monthly service contract the hospital entered into.

*No. 14: EPA Compliance Records*

*{¶28}* Clinton contends that she is missing five documents from her request to the hospital for these materials: one from each of the years 1997 through 2001.

*Nos. 15 and 27: Air Quality Monitoring*

**{¶29}** Clinton contends that the hospital failed to produce air quality assessment summaries relative to the helicopter exhaust fumes for the years 1996 through 2001. Further, she contends that the hospital failed to produce the underlying documents that were used to create the summaries.

*No. 17(b): Services, Bids, and Contracts*

**{¶30}** In this request, Clinton sought records showing the services used, bids submitted, and contracts entered into by MetroHealth to construct, and/or repair, or replace the air handlers and air changers on its roof between 1996 and 2007.

*No. 18: Incinerator Demolition*

**{¶31}** Clinton sought records regarding the May 2001 demolition of the incinerator.


*No.    19: Employee Injuries or Illnesses*

**{¶32}** In this request, Clinton sought records documenting employees of MetroHealth exposure to toxic substances, injuries, illnesses, and fumes.    Clinton contends that the hospital produced some records, "but not nearly enough."

*No. 20: Internal Indoor Air Quality Sampling*

**{¶33}** This request sought internal indoor air quality sampling records from 1996 through 2010.   Clinton contends that, in 2010, while she was an employee of the hospital,

she obtained a January 6, 2006 work request order generated after another employee's complaint about the air quality in the hospital. Clinton now asks, "[w]here are the thousands of other work orders like the one she printed out at Metro?"

*No. 21: Environmental Hazard Inspection Reports*

**{¶34}** Clinton sought in this request environmental hazard inspection reports for 2004 through 2010. She contends that some, but not all, were produced. She further seeks the biological cabinet test report for 2007, and the care lab fume hood test reports for 2007 through 2010.

*No. 23: Benzene Monitoring Records*

**{¶35}** Clinton contends that she has a 2004 test from a company that monitored benzene and other substances at the hospital. In response to her request, the hospital stated that it did not monitor benzene and, therefore, had no such records. Clinton now suggests that it is not true, stating, "[i]f Metrohealth did not monitor Benzene as claimed, then there would be no record, but [she] has a record."

*No. 24: Formaldehyde Monitoring Records*

**{¶36}** Clinton contends that MetroHealth provided her with some documentation regarding formaldehyde monitoring at the hospital, but did not provide records for 1996 through 2011.

*No. 26: Hazard Communication Training Course Materials*

**{¶37}** Clinton contends that MetroHealth provided her with some documents under this request, but failed to produce the documents for 2000, 2002, and 2006.

**Untimely Mandamus Action**

{¶38} Many of Clinton's requests in this case were for documents she had previously requested from MetroHealth in 2007. By her own admission in her complaint, the documents she sought under request numbers 2, 5, 7, 8, 9, 10, 11, 13, 14, 15, 19, 20, and 21 were also requested in 2007. Further, the portion of request number 1 that related to the incinerator logs was previously made in 2007.

{¶39} Under R.C. 149.43(B)(1), "upon request, a public office or person responsible for public records shall make copies of the requested public record available at cost and within a reasonable period of time." In her 2007 request, Clinton asked that the documents be provided to her within 45 days of the request, which was dated January 30, 2007. On March 15, 2007, the hospital responded to her request. Clinton then waited until 2010 to file this mandamus action.

{¶40} R.C. 149.43(C)(1) provides as follows:

> If a person allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section or by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under division (C)(1) of this section.

{¶41} Although the statute does not specify the time period in which an alleged aggrieved person has to file her mandamus action, given the statute's emphasis on

promptness, we find it unreasonable that Clinton waited until 2010 to file this action relative to the documents she requested in 2007.   Thus, her mandamus action was untimely as to the requests made in numbers 2, 5, 7, 8, 9, 10, 11, 13, 14, 15, 19, 20, and 21.   The request for the incinerator logs made in request number 1 was also untimely.

{¶42} Moreover, Clinton's claim for forfeiture fees is also untimely.   Under R.C. 2305.11 and 149.351, forfeiture claims are governed by a one-year statute of limitations. MetroHealth responded to Clinton's 2007 request in March 2007.   Clinton had one year from that time within which to file her claim for forfeiture fees.

{¶43} In light of the above, this 2010 action was untimely as it related to the request numbers 2, 5, 7, 8, 9, 10, 11, 13, 14, 15, 19, 20, and 21, and the request for the incinerator logs made under number 1.   The trial court properly granted summary judgment in favor of the hospital as to Clinton's public records request made under these numbers.

{¶44} Additionally, this court already decided Clinton's request for EPA logs (request number 14) in *Clinton I*, and held that the request was vague and untimely. Clinton's request in this case for those same logs is, therefore, barred under the doctrine of res judicata.[4]

**Clear and Convincing Evidence of Failure to Produce**

---

[4]The doctrine of res judicata provides that a "valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus.   "[A]n existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit." *Id.* at 382.

**{¶45}** Although "[w]e construe the Public Records Act liberally in favor of broad access and resolve any doubt in favor of disclosure of public records," *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6, the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus ("Relators in mandamus cases must prove their entitlement to the writ by clear and convincing evidence").

**{¶46}** Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶47}** Upon review, we find that Clinton has only provided speculation, rather than clear and convincing evidence, that the records relating to her request numbers 10, 11, 14, 18, 23, and 24 even exist in light of MetroHealth's contention that they do not. Further, MetroHealth responded that it does not have other documentation responsive to the remaining portion of Clinton's request made in number 1. She has not provided clear and convincing evidence that any such documentation exists.

**{¶48}** The trial court, therefore, properly granted summary judgment in favor of MetroHealth as to the remaining portion of her request under number 1, as well as her requests under numbers 10, 11, 14, 18, 23, and 24.

**Request for Employees' Medical Records**

**{¶49}** Clinton cannot establish that she has the right to records relating to medical treatment received by other MetroHealth employees. Such information is confidential and not required to be produced, even under a public records request. As the Ohio Supreme Court stated:

> In general, a person's medical records are confidential. Numerous state and federal laws recognize and protect an individual's interest in ensuring that his or her medical information remains so. For example, the Ohio Public Records Act prohibits medical records maintained by public institutions from being released pursuant to a public-records request: "'Public record' means records kept by any public office * * * [but] does not mean any of the following: (a) Medical records." R.C. 149.43(A)(1)(a). Likewise, the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA") prevents healthcare providers from disclosing health information except in certain specific circumstances. *See generally* 45 C.F.R. 164.502. * * *

(Footnote omitted.) *Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, ¶ 9.

**{¶50}** In light of the above, Clinton was not entitled to the records contained in her request numbers 8 and 19.

**Remaining Requests**

*Request Number 17(B)*

**{¶51}** MetroHealth requested that Clinton clarify the scope of her request made

under number 17(B). The hospital contends that after seeking clarification of the request, it

then provided "substantial contract documents for Clinton's review. She reviewed these documents on August 11, 2010, at MetroHealth after already filing her suit against [it]. She now claims that she was not shown certified payment histories; however, she admitted in her deposition that she did not advise the MetroHealth staff that was assisting her that the voluminous project documents they provided for her review did not include [the] type of record that she wanted to review.

**{¶52}** Clinton contends that "although a few documents were provided they don't reflect the $50 million dollars in contracts in that period."

**{¶53}** Upon review, the trial court did not err in granting summary judgment in the hospital's favor as to this request. Clinton's contention that more documentation exists is speculative. Moreover, it is overbroad; she has not pinpointed specific documentation that was not provided to her by MetroHealth.

*Request Number 26*

**{¶54}** Clinton contends that the hospital provided hazard communication training course materials for the "sick building syndrome" for 1996-2007, but not for the years 2000, 2002, and 2006, as requested. Clinton's contention does not make sense. The years 2000, 2002, and 2006 are encompassed in the years 1996-2007. It is unclear exactly what Clinton claims she was entitled to, but did not receive. The trial court therefore properly granted summary judgment in favor of the hospital as to this request.

### III.   Conclusion

**{¶55}** The trial court did not err in granting summary judgment in favor of

MetroHealth on Clinton's mandamus action. Her requests were either not timely made, barred by res judicata, speculative, for confidential information, or unclear. Clinton's sole assignment of error is therefore overruled. The trial court's judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

KENNETH A. ROCCO, J., and
MELODY J. STEWART, J., CONCUR