THE STATE EX REL. HUSTED *v.* BRUNNER ET AL.

[Cite as *State ex rel. Husted v. Brunner,* 123 Ohio St.3d 288, 2009-Ohio-5327.]

*Mandamus — Writ sought to compel secretary of state and board of elections to find that relator is a resident of Montgomery County for election purposes and to maintain relator's name on the poll books as a properly registered Montgomery County elector for election purposes — Writ granted.*

(No. 2009-1707 — Submitted October 5, 2009 — Decided October 6, 2009.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is an expedited election action for a writ of mandamus to compel respondents, the secretary of state and the Montgomery County Board of Elections, to find that relator, Jon A. Husted, is a resident of Montgomery County for election purposes and to maintain Husted's name on the poll books as a properly registered Montgomery County elector for all election purposes. Because the secretary of state erred in canceling Husted's existing Montgomery County voter registration without following any of the statutorily prescribed methods for doing so and further erred in concluding that there was clear and convincing evidence that Husted is not a Montgomery County resident, we grant the writ and order the Montgomery County Board of Elections to treat Husted as a Montgomery County resident for election purposes.

**I. Facts**

{¶ 2} Relator, Jon A. Husted, served in the Ohio House of Representatives from 2001 to 2008, representing the 37th House District, which is located in Montgomery County. Husted served as Speaker of the House from 2005 through 2008. In November 2008, Husted was elected to the Ohio Senate,

where he currently represents the Sixth Senate District, which is located in Montgomery County. Husted is registered to vote in Montgomery County.

**{¶ 3}** In October 2008, a nonprofit corporation and a Montgomery County elector requested that respondent Montgomery County Board of Elections investigate Husted's eligibility to vote as a resident of Montgomery County. A few months later, the board conducted a hearing at which Husted presented the only testimony. At the beginning of the hearing, the board's counsel described the hearing as an administrative investigatory hearing that was being conducted based upon the board's authority pursuant to R.C. 3501.11(J) to investigate irregularities. Husted testified that he has lived in the Dayton area for the past 24 years, including the past 14 years at his home in Kettering. Three years ago, he married his current wife, who owns a house in the Columbus area, and she resides there with their young daughter. Husted testified that he splits time between Montgomery and Franklin Counties, but has been outside of Montgomery County only due to his employment as a state legislator. He also presented the uncontroverted testimony that it is his intention upon the completion of his public service to return to his home in Kettering in Montgomery County. He pays taxes in Kettering, receives some mail at that address, and returns there at least weekly despite his legislative commitments in Franklin County.

**{¶ 4}** At a subsequent meeting, the board of elections tied two-to-two on the issue of whether Husted is a qualified elector of Montgomery County, and the director of the board submitted the tie vote to respondent Secretary of State Jennifer L. Brunner in March 2009. The secretary determined that the record submitted to her by the board was insufficient, so she obtained additional evidence and then returned the matter to the board for its consideration of the additional evidence. When the board again deadlocked on the matter, it was resubmitted to the secretary in mid-July.

2

**{¶ 5}** On September 14, we granted a writ of mandamus to compel the secretary of state to comply with her duty under R.C. 3501.11(X) to break the elections board's tie vote and summarily decide the issue of Husted's residency within seven days. *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 119, 2009-Ohio-4805, 914 N.E.2d 397.

**{¶ 6}** On September 21, the secretary of state broke the tie vote by concluding that it had been established by clear and convincing evidence that Husted "is no longer a resident of Montgomery County and therefore is not eligible to vote there." The secretary noted in her opinion that the board had proceeded pursuant to its authority under R.C. 3501.11(J) to " '[i]nvestigate irregularities, nonperformance of duties, or violations of Title XXXV of the Revised Code by election officers and other persons; administer oaths, issue subpoenas, summon witnesses, and compel the production of books, papers, records, and other evidence in connection with any such investigation; and report the facts to the prosecuting attorney or the secretary of state.' " The secretary further noted that the board had a duty to act on the matter under R.C. 3501.11(Q) to " '[i]nvestigate and determine the residence qualifications of electors.' "

**{¶ 7}** Husted then filed this expedited election action for a writ of mandamus against the secretary of state and the board of elections.

## II. Legal Analysis

### A. *Mandamus to Challenge Secretary of State's Tie-Breaking Decision*

**{¶ 8}** "To be entitled to the requested writ, relator[] must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the secretary of state [and the board of elections] to provide it, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Heffelfinger v. Brunner*, 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 13. Because of the proximity of the November 3 election at which Husted wishes to vote as a Montgomery County elector, he has established that he lacks

an adequate remedy in the ordinary course of the law. *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 10.

{¶ 9} For the remaining requirements, "[i]n extraordinary actions challenging the decisions of the Secretary of State and boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Mandamus is the appropriate remedy to challenge the secretary's tie-breaking decision in these circumstances. See id.; see also *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 583, 651 N.E.2d 995. Husted claims that the secretary of state and the board of elections abused their discretion and clearly disregarded applicable law by ruling that he is not a qualified elector of Montgomery County.

*B. Failure to Follow Proper Procedure for Canceling Registration*

{¶ 10} Husted claims that the secretary of state and the board of elections clearly disregarded applicable law by failing to follow the proper procedure for canceling his voter registration. We agree that he is entitled to the requested extraordinary relief because the board followed a procedure that is not authorized by the pertinent statutory provisions.

{¶ 11} As we have consistently held, " 'County boards of elections are of statutory creation, and the members thereof in the performance of their duties must comply with applicable statutory requirements.' " *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 12, quoting *State ex rel. Babcock v. Perkins* (1956), 165 Ohio St. 185, 187, 59 O.O. 258, 134 N.E.2d 839.

{¶ 12} The election statutes address the cancellation of a voter's registration with specificity. R.C. 3503.21(C) provides that "[t]he registration of

a registered elector shall not be canceled except as provided in this section, division (Q) of section 3501.05 of the Revised Code, division (C)(2) of section 3503.19 of the Revised Code, or division (C) of section 3503.24 of the Revised Code." Because Husted's registration was not canceled pursuant to one of the prescribed methods, he has established his entitlement to the requested extraordinary relief.

{¶ 13} It is clear from the record that R.C. 3501.05(Q) and 3503.21 do not apply. R.C. 3501.05(Q) grants the secretary of state the authority to adopt rules to carry out the provisions of R.C. 3503.21 for the removal of ineligible voters from the statewide voter-registration database. R.C. 3503.21[1] describes different occurrences that will cause a registered elector's registration to be canceled, the only potentially relevant one being R.C. 3503.21(A)(5) ("change of residence of the registered elector to a location outside the county of registration"). Before a voter's registration is canceled under this subsection, the board of elections must send a confirmation notice and the registered elector must fail to respond to the

---

1. {¶ a} R.C. 3503.21 provides:

{¶ b} "(A) The registration of a registered elector shall be canceled upon the occurrence of any of the following:

{¶ c} "(1) The filing by a registered elector of a written request with a board of elections, on a form prescribed by the secretary of state and signed by the elector, that the registration be canceled. The filing of such a request does not prohibit an otherwise qualified elector from reregistering to vote at any time.

{¶ d} "(2) The filing of a notice of the death of the registered elector as provided in section 3503.18 of the Revised Code;

{¶ e} "(3) The conviction of the registered elector of a felony under the laws of this state, any other state, or the United States as provided in section 2961.01 of the Revised Code;

{¶ f} "(4) The adjudication of incompetency of the registered elector for the purpose of voting as provided in section 5122.301 of the Revised Code;

{¶ g} "(5) The change of residence of the registered elector to a location outside the county of registration in accordance with division (B) of this section;

{¶ h} "(6) The failure of the registered elector, after having been mailed a confirmation notice, to do either of the following:

{¶ i} "(a) Respond to such a notice and vote at least once during a period of four consecutive years, which period shall include two general federal elections;

{¶ j} "(b) Update the elector's registration and vote at least once during a period of four consecutive years, which period shall include two general federal elections."

confirmation notice or otherwise update the registration and fail to vote in any election during the period of two federal elections after the mailing of the confirmation notice. R.C. 3503.21(B)(2). Nothing in the record indicates that the board of elections ever sent Husted a confirmation notice under this subsection or that he failed to vote after any such mailing. R.C. 3503.19(C)(2)[2] also does not apply, because it relates to a voter's initial registration, which is not the issue here.

{¶ 14} The only remaining manner in which Husted's registration may be canceled is R.C. 3503.24(C).[3] The secretary of state, however, specifically rejects this ground because she asserts that this case does not involve challenges to a person's right to vote under R.C. 3503.24 or R.C. 3505.19. Instead, she relies on the general provision in R.C. 3501.11(Q) granting boards of elections the authority to "[i]nvestigate and determine the residence qualifications of electors." The secretary of state takes an expansive view of this phrase, contending that a

2. {¶ a} R.C. 3503.19(C)(2) provides:

{¶ b} "If, after investigating as required under division (C)(1) of this section, the board is unable to verify the voter's correct address, it shall cause the voter's name in the official registration list and in the poll list or signature pollbook to be marked to indicate that the voter's notification was returned to the board.

{¶ c} "At the first election at which a voter whose name has been so marked appears to vote, the voter shall be required to provide identification to the election officials and to vote by provisional ballot under section 3505.181 of the Revised Code. If the provisional ballot is counted pursuant to division (B)(3) of section 3505.183 of the Revised Code, the board shall correct that voter's registration, if needed, and shall remove the indication that the voter's notification was returned from that voter's name on the official registration list and on the poll list or signature pollbook. If the provisional ballot is not counted pursuant to division (B)(4)(a)(i), (v), or (vi) of section 3505.183 of the Revised Code, the voter's registration shall be canceled. The board shall notify the voter by United States mail of the cancellation."

3. {¶ a} R.C. 3503.24(C) provides:

{¶ b} "If the board decides that any such person is not entitled to have the person's name on the registration list, the person's name shall be removed from the list and the person's registration forms canceled. If the board decides that the name of any such person should appear on the registration list, it shall be added to the list, and the person's registration forms placed in the proper registration files. All such corrections and additions shall be made on a copy of the precinct lists, which shall constitute the poll lists, to be furnished to the respective precincts with other election supplies on the day preceding the election, to be used by the election officials in receiving the signatures of voters and in checking against the registration forms."

board of elections' power is not limited to situations that arise under R.C. 3503.24 or 3505.19.

{¶ 15} As we detailed previously, however, boards of elections are created by statute and must comply with applicable statutory requirements. *Whitman*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 12. Furthermore, the general rule is that, unless there is language allowing substantial compliance, election statutes are mandatory and must be strictly complied with. *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 476, 764 N.E.2d 971.

{¶ 16} Because the General Assembly has provided specific provisions by which an elector's voting registration may be challenged and limited the manner by which an elector's registration may be canceled, R.C. 3503.24 and 3505.19, these statutes involving challenges to an individual's right to vote are the statutes that control. The failure of respondents to comply with these provisions entitles Husted to a writ of mandamus.

*C. Residency Determination*

{¶ 17} The parties have submitted the substantive issue of Husted's residence to the court for its consideration. The secretary of state asserts in her September 21 tie-breaking decision that cancellation of an elector's existing voter registration requires clear and convincing evidence that the registration is incorrect. Solely for purposes of this case, we will defer to the secretary of state's usage of this standard. Husted has not challenged the applicability of the standard.

{¶ 18} Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as

to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 19} R.C. 3503.02 specifies the rules for determining a person's residence to register to vote:

{¶ 20} "All registrars and judges of elections, in determining the residence of a person offering to register or vote, shall be governed by the following rules:

{¶ 21} "(A) That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning.

{¶ 22} "(B) A person shall not be considered to have lost the person's residence who leaves the person's home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.

{¶ 23} "(C) A person shall not be considered to have gained a residence in any county of this state into which the person comes for temporary purposes only, without the intention of making such county the permanent place of abode.

{¶ 24} "(D) The place where the family of a married person resides shall be considered to be the person's place of residence; except that when the spouses have separated and live apart, the place where such a spouse resides the length of time required to entitle a person to vote shall be considered to be the spouse's place of residence.

{¶ 25} "* * *

{¶ 26} "(G) If a person removes from this state to engage in the services of the United States government, the person shall not be considered to have lost the person's residence in this state during the period of such service, and likewise should the person enter the employment of the state, the place where such person resided at the time of the person's removal shall be considered to be the person's place of residence."

{¶ 27} Because of the sometimes conflicting nature of these sections, when multiple sections are applicable – as here – it is difficult to find by clear and convincing evidence that a person is not a resident of the county claimed. That is, "[t]he rules which the General Assembly specified were apparently intended to enable an individual in such a situation to select as his residence some place which fairly conformed with one or more of the several rules specified, even though it might not conform with some of the other rules so specified or might not be his domicile." *State ex rel. Klink v. Eyrich* (1952), 157 Ohio St. 338, 344, 47 O.O. 198, 105 N.E.2d 399 (Taft, J., concurring). Consequently, when the applicability of multiple sections leads to conflicting results, it cannot be shown by the heightened standard of clear and convincing evidence that the person is not a resident of that county and great weight must be accorded to the person's claimed voting residence.

{¶ 28} Husted relies on R.C. 3503.02(A), (B), (C), and (G)[4] as well as Section 3, Article II of the Ohio Constitution to support his status as a qualified Montgomery County elector. The secretary of state relied on R.C. 3503.02(D) to rule that it had been established by clear and convincing evidence that he is not a Montgomery County resident. For the following reasons, the secretary of state clearly disregarded applicable law in so ruling.

{¶ 29} First, the secretary of state erred in concluding that Section 3, Article II of the Ohio Constitution is inapplicable. This section provides that "[s]enators and representatives shall have resided in their respective districts one year next preceding their election, unless they shall have been absent on the public business of the United States, or of this State." This constitutional provision ensures that a state legislator's absence from the district on official

---

4. The secretary of state contends that R.C. 3503.02(G) applies only if a person "removes from this state," which is not the situation here. Husted disagrees with this interpretation. Because R.C. 3503.02(G) is not necessary to our determination of this matter, we neither decide the question here nor do we rely upon the provision in our decision.

duties does not jeopardize his or her right to claim a full year's residence in the district. When construed in pari materia with the rules specified in R.C. 3503.02, Section 3, Article II of the Ohio Constitution supports Husted's claimed residency in Montgomery County because the uncontroverted evidence is that his presence in Franklin County is primarily because of his employment as a state legislator. See R.C. 1.47(C) (in enacting a statute, it is presumed that the legislature intended to comply with the Constitution).

{¶ 30} Second, the secretary of state failed to accord proper weight to Husted's intent that his Kettering home remain his permanent residence for purposes of voting. R.C. 3503.02 "provides that the person's intent is of great import," *State ex rel. Stine v. Brown Cty. Bd. of Elections*, 101 Ohio St.3d 252, 2004-Ohio-771, 804 N.E.2d 415, ¶ 15, and thus "emphasizes the person's intent to make a place a fixed or permanent place of abode." *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 11. The secretary of state conceded that "Senator Husted's undisputed testimony repeatedly emphasized his intent to return to Montgomery County on a full-time basis when his public service is completed," but she ultimately discounted this uncontroverted evidence.

{¶ 31} In effect, the evidence before the secretary of the state and the board of elections established that Montgomery County is the place in which Husted's habitation is fixed and to which he has the intention of returning. R.C. 3503.02(A). In addition, Husted could not be considered to have lost his Montgomery County residence when he left the county for the temporary purpose of working as a state legislator in Franklin County with the intention of returning when that state service ends. R.C. 3503.02(B). Nor could Husted be considered to have gained a residence in Franklin County, which Husted entered for the temporary purpose of state employment only, without the intention of making that county his permanent place of abode. R.C. 3503.02(C).

**{¶ 32}** Third, the secretary of state erroneously relied exclusively on R.C. 3503.02(D) (which creates a presumption that the place where the family of a married person resides is the person's place of residence) to decide the residency issue. All of R.C. 3503.02, including section D, is phrased in mandatory language, so elevating R.C. 3503.02(D) over others, e.g., R.C. 3503.02(A) through (C), without reasonable justification is impermissible.

**{¶ 33}** By effectively treating the R.C. 3503.02(D) factor as the exclusive factor applicable to Husted, the secretary created an irrebuttable presumption to classify Husted as a nonresident of Montgomery County, which is not constitutionally permissible. *Bell v. Marinko* (C.A.6, 2004), 367 F.3d 588, 593.

**{¶ 34}** Our holding is consistent with precedent. For example, in *Klink*, 157 Ohio St. 338, 47 O.O. 198, 105 N.E.2d 399, we held that a board of elections properly decided that a married person whose family lived in Franklin County was a qualified elector of Hamilton County because of substantial evidence that the person intended to eventually return to Cincinnati. See also *State ex rel. Lakes v. Young* (1954), 161 Ohio St. 341, 53 O.O. 249, 119 N.E.2d 279 (married man did not lose voting residence in township even though his family moved temporarily to a city).

### III. Conclusion

**{¶ 35}** Husted has established his entitlement to the requested extraordinary relief. Therefore, we grant a writ of mandamus to compel the Montgomery County Board of Elections to find that Jon A. Husted is a resident of Montgomery County for election purposes and to maintain his name on the poll books as a properly registered Montgomery County elector for all purposes.

Writ granted.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., concurs in Part II(C) of the opinion and in judgment.

LANZINGER, J., concurs in Part II(B) of the opinion and in judgment.

PFEIFER, J., concurs in judgment only.

_____

**PFEIFER, J., concurring in judgment only.**

{¶ 36} For each Ohio citizen, where he or she deems to be home is a highly personal matter. Home is often different from where one is presently living. R.C. 3503.02 attempts to recognize that elusive, emotional connection to "home." But this particular case is not difficult: considering that R.C. 3503.02 allows voters to retain a residence by relying on a vague notion of intent to return, it must certainly allow all members of the General Assembly to retain their residences in the places they regard to be home while living with their families in the state capital.

_____

Bricker & Eckler, L.L.P., Maria J. Armstrong, Anne Marie Sferra, and Jennifer A. Flint, for relator.

Richard Cordray, Attorney General, and Richard N. Coglianese, Damian Sikora, Erick D. Gale, Robert Moormann, and Michael J. Schuler, Assistant Attorneys General, for respondent secretary of state.

McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo, urging denial of the writ for amicus curiae, ProgressOhio.org.

_____