[Cite as *State v. O'Cull*, 2018-Ohio-4459.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 17CA6 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| TRACEY O'CULL, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 10/29/18** |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Nikki Trautman Baszynski, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for Appellee.

_____

McFarland, J.

{¶1} This is an appeal from a Highland County Court of Common Pleas judgment entry convicting Appellant, Tracey O'Cull, of one count of corrupting another with drugs (fentanyl), a second-degree felony in violation of R.C. 2925.02(A)(3), and sentencing her to a maximum prison term of eight years. Because we find no merit to Appellant's sole assignment of error, it is overruled and the judgment and sentence imposed by the trial court is affirmed.

FACTS

{¶2} Appellant, Tracey O'Cull, was indicted on one count of first-degree felony involuntary manslaughter and one count of second-degree felony corrupting another with drugs in connection with the death of Benjamin Hahn, the victim herein, who was found dead on December 19, 2015. The State alleged that the victim (who had a history of drug use and who had recently been released from a rehabilitation program) contacted several individuals, including Appellant, on December 18, 2015 seeking heroin. The State further alleged that later that night, Appellant drove to the victim's residence and sold drugs to him. Appellant's mother found him unresponsive the next morning, with a syringe, empty capsules, a metal spoon and a cell phone. Text messages between the victim and Appellant indicated Appellant texted the victim that she was in his driveway shortly before his death occurred. Later toxicology testing revealed that Appellant had fentanyl in his system when he died, and a pathology report indicated the victim died from fentanyl intoxication.

{¶3} The matter proceeded to a jury trial which resulted in a hung jury on the manslaughter count and a conviction on the corrupting another with drugs count. The trial court ordered a pre-sentence investigation and ultimately sentenced Appellant to an eight-year maximum term of

imprisonment.  It is from this conviction and sentence that Appellant now brings her timely appeal, setting forth a single assignment of error for our review.

ASSIGNMENT OF ERROR

"I.     THE RECORD DOES NOT CLEARLY AND CONVINCINGLY SUPPORT TRACEY O'CULL'S SENTENCE."

{¶4}  In her sole assignment of error, Appellant contends that the record does not support her maximum, eight-year sentence.  More specifically, Appellant contends that the trial court's sentence was based upon findings not supported by the record, as well as findings that misinterpret statutory factors, and that her sentence must be vacated as a result.  The State contends that the record clearly and convincingly supports Appellant's sentence.

{¶5}  When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 22-23.  Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."  Instead, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

"(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
(b) That the sentence is otherwise contrary to law."

{¶6}  Although R.C. 2953.08(G)(2)(a) does not mention R.C. 2929.11 and 2929.12, the Supreme Court of Ohio has determined that the same standard of review applies to those statutes. *Marcum* at ¶ 23 (although "some sentences do not require the findings that R.C. 2953.08(G)(2)(a) specifically addresses[,] * * * it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court"); *State v. Butcher*, 4th Dist. Athens No. 15CA33, 2017-Ohio-1544, ¶ 84.  Consequently, "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶ 23; *Butcher* at ¶ 84.

{¶7}  "Once the trial court considers R.C. 2929.11 and 2929.12, the burden is on the defendant to demonstrate by clear and convincing evidence that the record does not support his sentence." *State v. Akins-Daniels*, 8th Dist. Cuyahoga No. 103817, 2016-Ohio-7048, ¶ 9; *State v. O'Neill*, 3rd Dist. Allen No. 1-09-27, 2009-Ohio-6156, fn. 1.  "Clear and convincing evidence

is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18; quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶8} We initially conclude that Appellant's sentence is not clearly and convincingly contrary to law. The trial court imposed an eight-year term of imprisonment. While an eight-year term does constitute a maximum sentence for a second-degree felony offense, it is within the statutory range for the offense. Further, Appellant does not argue that her sentence is contrary to law, but rather that the record does not clearly and convincingly support her sentence.

{¶9} In particular, Appellant contends significant findings made by the trial court that justified the maximum sentence are not supported by the record. Appellant argues the trial court made two findings indicating her conduct was more serious than conduct normally constituting the offense, which were not supported by the record: 1) that the victim's death was

exacerbated by his addiction; and 2) that the relationship between the victim

and Appellant facilitated the offense. The record indicates the trial court

found as follows regarding these factors:

> "Now, in looking at this and going through the analysis that I would do in any case, I've looked at the factors that are set forth in 2929.11 thru .14, I'll go through and say this: It is true that the victim facilitated the offense by voluntarily using the drugs. In terms of committing the offense, the offender expected to cause physical harm, I think, yes, I think addiction is physical harm, obviously it's killing people.
>
> And so any time a seller of heroin or Fentanyl gives drugs to someone, I think there can be an expectation that there could be an overdose.
>
> I'll find under 2929.12 there is an aggravating factor, in that the physical injury suffered by the victim due to the offender's conduct was exacerbated because of his physical and mental condition, specifically I find that addiction is a mental condition; and actually with heroin it is a physical addiction. So, therefore, uh, you know, the injury again when people sell dope to each other, particularly opiates, that's an awareness, it's just so overwhelmingly prevalent, as counsel had indicated, that the people in this world, they know that, and they understand that.
>
> And obviously the victim's relationship with the offender facilitated the offense, because he apparently knew he could get drugs from her, and called her by her first name. And from text messages it's clear that they had some sort of pre-existing relationship, friends, dealer/buyer, I don't know, but it's clear that there was a relationship there."

{¶10} With respect to the trial court's finding that Appellant's

relationship with the victim facilitated the offense, Appellant contends that

the trial court's interpretation of the word facilitation "would essentially render the factor meaningless and arbitrary."  She argues that the legislature sought to impose harsher punishment on individuals "who exploited their victim's trust or dependence[,] not individuals who merely knew their victims."  A similar argument was made in *State v. Sari*, 11th Dist. Lake No. 2016–L–109, 2017-Ohio-2933.  Sari was indicted for one count of illegally conveying drugs into a detention facility and two counts of corrupting another with drugs. *Id.* at ¶ 3.  Sari entered into a plea agreement on all counts and stipulated that the evidence would have shown that she and two other individuals (one of which was Martin, who was also confined in jail at the same time as Sari) entered into a plan to bring drugs into the detention facility when Sari was returning after being released on medical furlough. *Id.* at ¶ 6.  The plan succeeded by Sari concealing heroin in her vagina and distributing it to several others in the detention center once she returned, including Martin and another individual, Ellis. *Id.*  The next day, Martin was found unresponsive in her cell and had to be revived with Narcan, and Ellis was found dead in her cell. *Id.*

{¶11}  On appeal, Sari argued that the trial court incorrectly analyzed the factor involving whether her relationship with the victim facilitated the offense. *Id*. at ¶ 23.  Sari argued that her relationship with the victims did not

facilitate the offense, and "that if we were to find this factor 'is triggered under these circumstances, then virtually every distribution of drugs to a friend would invoke this factor.' " *Id.* The State argued, in part, "that the victims would never have received the drugs from Ms. Sari had they not had a relationship with her[.]" *Id.* The Eleventh District noted in *Sari* as follows with regard to the definition of the word facilitate:

> "To facilitate means to make easier. The American Heritage Dictionary (2 Ed.1985) 484. In order to have the relationship facilitate the offense, the defendant must have used his relationship with the victim to help commit the offense. In other words, the defendant must have used the relationship to allow him to commit the offense in a manner which he could not have accomplished without the relationship. *State v. Manley*, 3d Dist. Allen No. 1–11–04, 2011–Ohio–5082, ¶ 20, citing *State v. McDade*, 6th Dist. Ottawa Nos. OT–06–001, OT–06–004, 2007–Ohio–749, ¶ 54." *Id.*

The *Sari* court ultimately found, based upon the evidence before it, that the factor could be argued either way, noting that Sari's relationship with Martin, in particular, made it easier for her obtain the heroin she later distributed into the jail. *Id.* at ¶ 24. The court did not further analyze Sari's relationship with the other victim, noting that even if the determination had been made in error, it was harmless considering the other seriousness and recidivism factors present, which included the fact that Sari's conduct was part of organized criminal activity and resulted in serious physical harm. *Id.* at ¶ 24-26.

{¶12}  Much like the *Sari* court, we conclude this particular factor can be argued either way.  Here, however, Appellant's argument on appeal is belied by her counsel's arguments made at the sentencing hearing itself. Appellant's counsel argued at the sentencing hearing that the victim facilitated the offense, and that Appellant "had no special relationship of trust with Ben, other than the relationship that the drug culture itself creates between users who come together for the purpose of finding drugs, sharing drugs, using drugs, and getting high."  Appellant's counsel further referenced the "bizarre drug culture happening right now."  It appears, at the present time, that a trust relationship between drug dealers and drug buyers does exist, and we conclude that the relationship does facilitate drug offenses. With the technology currently available which permits law enforcement to recover and review text communications, trust is implicit with every text message that is sent between a buyer and seller.  Putting something into a written text message or any other traceable writing indicates a certain level of trust that the buyer or seller is not cooperating with law enforcement, is not acting as part of a controlled buy, and would not use that written communication against the sender.  In fact, the text messages between the victim and Appellant leading up to the drug sale were introduced as

evidence in this case. As such, we find the trial court appropriately considered and analyzed this sentencing factor.

{¶13} Appellant next argues that the trial court improperly found that the victim's death was exacerbated by his addiction. The trial court actually found that "[t]he physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim." Appellant argues that while the victim's addiction can be characterized as a mental or physical condition, it did not "exacerbate" the harm caused, but rather the victim's death was caused by the fentanyl present in the drugs he used. She further argues that the victim's "overdose was not made worse because of his addiction; instead, Ben's addiction was the reason he procured the drugs in the first place." Appellant also argues that the victim's addiction mitigated in her favor, which the trial court so found by noting the victim had "induced or facilitated" the offense.

{¶14} A review of the record indicates the trial court properly considered the fact that the victim facilitated the offense by voluntarily using drugs. Nevertheless, the trial court found that the injury, in this case death, of the victim, due to the conduct of Appellant, was exacerbated because of the mental or physical condition (drug addiction) of the victim. The record

here shows that Appellant had a history of drug addiction but had recently been released from a rehabilitation program. Further, the text messages between Appellant and the victim indicate the victim was seeking heroin. However, Appellant sold the victim what ended up being a lethal does of fentanyl.

{¶15} The State's theory at trial, based on the text messages between Appellant and the victim, text messages between the victim and another friend, and the medical evidence, was that Appellant took an initial dose of the drug he was provided, and that when he did not get an immediate result, as he would with heroin, he took another dose, which ultimately resulted in his death. It is unknown if the victim realized he was taking fentanyl, which he did not ask to purchase, rather than heroin, a drug which he had a history of using. In this regard, we cannot conclude that the trial court improperly found that the victim's death, due to the conduct of Appellant, was exacerbated by the victim's physical and mental condition of drug addiction. Further, we conclude that even if the trial court's determination does not properly interpret the word "exacerbate," as argued by Appellant, as in *Sari*, we conclude such error is harmless considering the other seriousness and recidivism factors supported by the record.

{¶16} Next, Appellant contends the trial court's rejection of mitigating factors was not supported by the record.  In support of this argument Appellant contends the trial court refused to find two mitigating factors that were supported by the record: 1) that Appellant acted under strong provocation, and 2) that Appellant did not expect to cause physical harm to the victim.  Appellant contends her own drug addiction provoked her to sell drugs to the victim, and argues that her drug addiction was illustrated in the pre-sentence investigation report.  She argues the trial court refused to acknowledge her addiction, but instead focused on the fact that her two most recent offenses were trafficking, not possession, charges.  The State contends Appellant made a choice to drive to the victim's home to sell him drugs, and that there is nothing in the record to suggest the victim threatened her or forced her to sell him drugs.

{¶17} The only mitigating factor found by the trial court was that "[t]he victim induced or facilitated the offense."  The trial court did not find, as argued by Appellant, that Appellant acted under strong provocation in committing the offense.  As noted by Appellant, the trial court noted at the sentencing hearing that Appellant's most recent offenses involved drug trafficking, as opposed to possession, which would indicate that addiction was a motivation.  Further, the pre-sentence investigation report does

contain information provided by Appellant indicating she was using drugs in 2015, the year the present offense occurred. The trial court specifically noted it had reviewed the pre-sentence investigation report in making its determinations. Thus, it appears the trial court considered the information suggesting Appellant suffered from drug addiction, but it nevertheless did not assign that information great weight.

{¶18} In *State v. Yost*, 4th Dist. Meigs No. 17CA10, 2018-Ohio-2719, ¶ 3, an argument was made that the trial court improperly balanced and weighed the seriousness and recidivism factors in imposing a maximum sentence. This Court reasoned, in response to that argument, as follows:

> "Although other factors cited by Yost's counsel at the sentencing hearing supported a finding that the offense was less serious or that she would be less likely to commit a future crime, see R.C. 2929.12(C) and (E), the trial court did not need to—as Yost appears to implicitly claim—assign equal weight to each applicable factor. Instead, precedent refutes any contention that each statutory or other relevant factor is entitled to equal or a certain weight in the balancing process. *See State v. Graham*, 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, ¶ 25, rejecting the argument that because each of the statutory sentencing factors are mandatory, each is entitled to equal weight on balance, citing *State v. Bailey*, 4th Dist. Highland No. 11CA7, 2011-Ohio-6526, ¶ 34, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000) ("in considering the factors set forth in R.C. 2929.12, the trial court has 'the discretion to determine the weight to assign a particular statutory factor' ")." *Yost* at ¶ 19.

Here, the trial court considered all of the evidence before it, including the information contained in the pre-sentence investigation and Appellant's more recent trafficking offenses, and ultimately determined that Appellant's alleged drug addiction did not mitigate against her conduct in selling the victim a legal dose of fentanyl. We cannot conclude that the trial court failed to properly consider or analyze this seriousness or recidivism factor, or that this determination was contrary to law based upon the record before us.

{¶19} Finally, we find Appellant's argument that the trial court failed to determine that Appellant did not expect to cause physical harm to the victim to be a mitigating factor to be disingenuous. The trial court made several statements at the sentencing hearing regarding Appellant's role in the death of the victim. For instance, the following comments were made:

> "In terms of committing the offense, the offender expected to cause physical harm, I think, yes, I think addiction is physical harm, obviously it's killing people. And so any time a seller of heroin or Fentanyl gives drugs to someone, I think there can be an expectation that there could be an overdose.
> * * *
> So, therefore, uh, you know, the injury again when people sell dope to each other, particularly opiates, that's an awareness, it's just so overwhelmingly prevalent, as counsel has indicated, that the people in this world, they know that, and they understand that.
> * * *
> And the Court will further find that in committing the offense, as far as the expectation to cause physical harm, again, as I said,

getting high is part of the physical harm because it speeds the addiction, which is clearly physical harm."

**{¶20}** Appellant argues that "[t]he problem with the trial court's interpretation of this statutory factor is that it reads into it a 'should have known' component that is unsupported by the plain language." Appellant contends that "[t]he statute does not exclude from consideration those individuals who should have known their actions could cause harm. Instead, the statute directs courts to consider that the offender may not have expected the harm to result and because of that, her conduct may be less serious than conduct normally constituting the offense."

**{¶21}** Regardless of how Appellant describes it, Appellant knew harm could, or was likely to result, from her conduct. Further, with regard to an assertion that her conduct may be less serious than conduct normally constituting the offense, Appellant corrupted another with drugs to the extent it resulted in his death. While her conduct may not have caused an initial addiction, it fed an addiction and resulted in the near immediate death of the victim. Therefore, we find no error in the trial court's failure to determine, as a mitigating factor, that Appellant did not cause, or expect to cause, harm to any person or property. *See State v. Sari, supra,* at ¶ 28 ("* * * because Ms. Sari did in fact cause physical harm to persons and because the contention that she did not expect to cause physical harm is belied by the act

of providing someone with heroin, a drug that has recently caused the death of countless individuals in this area. These arguments are not well taken.").

{¶22} Further, and as noted in *Yost*, the trial court made additional determinations in support of its issuance of a maximum sentence, including that Appellant, at the time of the offense, had previously served a prison sentence, that the victim suffered serious physical harm, that Appellant had not responded favorably to sanctions previously imposed for criminal convictions, and that Appellant showed no genuine remorse for the offense. All of these factors weighed against imposition of a shorter sentence, and the trial court was entitled to place additional weight on these factors. Therefore, we overrule Appellant's sole assignment of error.

{¶23} In our view, Appellant has not established that her eight-year prison sentence is clearly and convincingly not supported by the record. As such, her sole assignment of error is overruled and we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.: Concur in Judgment Only.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**