[Cite as *Hudson v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-576.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ORLANDO HUDSON,                          :

    Relator-Appellant,               :

                                        No. 109405

    v.                               :

GREATER CLEVELAND REGIONAL
TRANSIT AUTHORITY,                       :

    Respondent-Appellee.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 4, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-910726

---

### *Appearances:*

Haber Polk Kabat, L.L.P., Andrew A. Kabat, and Daniel M. Connell; Ciano & Goldwasser, L.L.P., and Andrew S. Goldwasser, *for appellant.*

Sheryl King Benford, General Counsel — Deputy General Manager for Legal Affairs, and Keith A. Ganther, Acting Deputy General Counsel — Litigation; Gallagher Sharp L.L.P., Joseph W. Pappalardo, and Richard C.O. Rezie, *for appellee.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Relator-appellant Orlando Hudson ("Hudson") appeals from the judgment of the trial court granting summary judgment in favor of respondent-appellee Greater Cleveland Regional Transit Authority ("GCRTA") on Hudson's complaint for writ of mandamus seeking certain public records that GCRTA refused to produce on the grounds of attorney-client privilege. After a thorough review of the facts and the law, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} The underlying issues in this matter stem from an internal discrimination complaint brought by Hudson, a lieutenant in the GCRTA police force, against GCRTA Police Chief John Joyce ("Joyce"), among others. GCRTA hired the law firm of Tucker Ellis to conduct an investigation into Hudson's complaint. According to the affidavit of GCRTA's Deputy General Counsel, Janet E. Burney, GCRTA retained outside counsel Tucker Ellis in order to provide advice and legal recommendations to GCRTA in anticipation of possible future litigation and because Hudson's allegations were lodged against upper-level management employees at GCRTA. During the investigation, Hudson filed a second discrimination complaint, adding further allegations against Joyce and some against Commander Michael Gettings.

{¶ 3} At the conclusion of its investigation, Tucker Ellis provided a report and executive summary to GCRTA, which provided legal advice and recommendations regarding the allegations. The report was initially disseminated to RTA's in-house

attorneys, along with the senior manager of RTA's Office of Equal Opportunity, Felicia Brooks-Williams ("Brooks-Williams"), RTA's chief operating officer, Dr. Floun'say Caver ("Caver"), and RTA's chief executive officer and general manager, Joseph Calabrese ("Calabrese").

{¶ 4} Caver and Calabrese then met with Joyce and provided him with a copy of the report to review. As chief, Joyce was one of the people at GCRTA responsible for the design and implementation of measures that would be taken in response to the conclusions and recommendations of the Tucker Ellis report. Joyce was asked during his deposition about sharing the report with lieutenants and sergeants. He responded that he believed the justification for sharing the report with "the higher level of the command staff" was for them to understand the investigation and changes that would be taken and to obtain their input on any new processes.

{¶ 5} Ms. Brooks-Williams met with Hudson and permitted him to view the report, but he was not permitted to retain a copy. At this time, she also provided him with a confidential memorandum that stated that the investigation into his complaints was finished and briefly summarized the findings of the investigation.

{¶ 6} Several months later, Hudson filed a charge alleging race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), and GCRTA filed its position statement in response. The charge was ultimately dismissed by the EEOC, and Hudson instituted his own civil action, which is currently pending.

{¶ 7} Hudson submitted a public-records request seeking the Tucker Ellis report, executive summary, all documents on the same subject, all communications between Tucker Ellis and GCRTA officials/employees regarding the investigation, and all prior drafts of the report and executive summary prepared by Tucker Ellis. GCRTA produced certain documents in response to the request, but refused to produce the remainder, asserting that they were exempt from disclosure due to attorney-client privilege and protected by the work-product doctrine.

{¶ 8} Hudson sought a writ of mandamus in the Cuyahoga County Court of Common Pleas. Hudson moved for summary judgment, arguing that (1) privilege did not apply to the documents because GCRTA voluntarily disclosed the documents to Hudson and Joyce; (2) the documents did not constitute work product because they were not created in anticipation of, or preparation for, litigation; and (3) even if the work-product doctrine did apply, GCRTA waived privilege because, in relying on the report in defense of Hudson's complaint filed with the EEOC, GCRTA utilized the *Faragher/Ellerth* defense, which Hudson claims effects a waiver of any privilege attaching to a party's investigation of alleged harassment.

{¶ 9} GCRTA opposed summary judgment, arguing that the documents were, in fact, work product because GCRTA was concerned about potential litigation before the investigation was concluded and the report produced. Further, GCRTA asserted that privilege was not waived because it was permitted to disclose the documents to Hudson and Joyce, who were high-ranking employees at GCRTA. Finally, GCRTA argued that assertion of the *Faragher/Ellerth* defense cannot

constitute waiver because Hudson never alleged that GCRTA failed to investigate his complaints.

{¶ 10} The trial court denied Hudson's motion for summary judgment, finding that "the limited disclosure to high-ranking individuals within GCRTA did not constitute a waiver of RTA's privilege." The court therefore held that the sought documents were not subject to disclosure as a public record and fell within the exception to the Ohio Public Records Act.

{¶ 11} Hudson filed the instant appeal, asserting the following assignment of error for our review:

> The trial court erred by finding that an investigation report, the draft investigation reports, and the investigation materials were not subject to disclosure under Ohio's Public Records Act on the grounds that they were privileged despite the fact that Respondent knowingly and voluntarily disclosed the investigation report to third parties, including the complaining party and the subject of the complaint, and where the Respondent relied upon the report as the basis for its *Faragher/Ellerth* affirmative defense.

## II. Law and Analysis

### A. Standard of Review

{¶ 12} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 13} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law. On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

## B. Ohio's Public Records Act

{¶ 14} R.C. 149.43, Ohio's Public Records Act, imposes a responsibility on public offices and officials throughout Ohio to ensure the public has access to public records maintained by those entities. "'Public record' means records kept by any public office." R.C. 149.43(A)(1). Unless an exception to disclosure enumerated in the Act applies, records maintained by a public office are open and available for inspection. Public offices, including the city and its divisions, have a responsibility to maintain a system of records that ensures easy public access. R.C. 149.43(B)(2).

**{¶ 15}** Where a public office or official has failed to provide records in a reasonable time, mandamus is one appropriate avenue of relief made available by R.C. 149.43(C)(1). *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 153 Ohio St.3d 63, 2017-Ohio-8988, 101 N.E.3d 396, ¶ 15, citing *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. The Public Records Act is to be liberally construed so as to ensure broad access to records. *Id.*

**{¶ 16}** To prevail on a claim for mandamus relief in a public-records case, the relator must establish, by clear and convincing evidence, a clear legal right to the requested relief and a corresponding clear legal duty on the part of the respondent to provide the relief. *State ex rel. Ellis v. Maple Hts. Police Dept.*, 158 Ohio St.3d 25, 2019-Ohio-4137, 139 N.E.3d 873, ¶ 5; *State ex rel. Carr v. London Corr. Inst.*, 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 19-20. Clear and convincing evidence is "'that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

### C. Waiver of Attorney-Client Privilege

### 1. Disclosure of the Report to Hudson and Joyce

**{¶ 17}** In the case sub judice, there is no dispute that the documents constitute public records or that they are subject to attorney-client privilege. The

only question is whether GCRTA waived the privilege. Hudson argues that privilege was waived both when GCRTA disclosed the report to Joyce and Hudson and through GCRTA's assertion of the *Faragher/Ellerth* defense. GCRTA contends that it was permitted to disclose the report to Joyce and Hudson without destroying privilege, and the *Faragher/Ellerth* defense waiver does not apply because Hudson never challenged the sufficiency of the investigation.

{¶ 18} We will begin with the argument that privilege was waived when the report was disclosed to Hudson and Joyce. GCRTA contends that it did not waive its attorney-client privilege by disclosing the Tucker Ellis report to its high-level employees, policy makers, and policy implementers, such as Hudson or Joyce, within the course and scope of their employment. GCRTA asserts that the Tucker Ellis report contained certain policies and changes that needed to be implemented; thus, it is unquestionable that Joyce, as chief, and Hudson, as one of his lieutenants, needed to be apprised of the contents of the report.

{¶ 19} Hudson acknowledges that GCRTA had the right to disclose the report to "high-ranking individuals" within GCRTA. He further does not dispute that both he and Joyce qualify as such people in the organization. His argument is instead based upon the reasoning for the disclosure. Hudson asserts that the disclosure was made not to GCRTA employees who needed to be aware of the conclusions and recommendations of the Tucker Ellis investigation in order to perform their job. Rather, Hudson contends that GCRTA decided to disclose the Tucker Ellis report to him to "be fair," rather than any other purpose.

**{¶ 20}** This court has previously held:

> "The attorney-client privilege bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made between the attorney and client in the course of seeking or rendering legal advice. Thus, the attorney-client privilege *belongs to the client*, and the only materials protected are those which involve communications with his attorney."

(Emphasis sic.) *Miller v. Bassett*, 8th Dist. Cuyahoga No. 86938, 2006-Ohio-3590, ¶ 13, quoting *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc.*, 82 Ohio App.3d 322, 329, 612 N.E.2d 442 (2d Dist.1992).

**{¶ 21}** "In *Upjohn Co. v. United States*, 449 U.S. 383, 66 L.Ed.2d 584, 101 S.Ct. 677 (1981), the United States Supreme Court addressed the attorney-client privilege as it applies to a corporate client and determined that the attorney-client privilege protects and prevents the disclosure of communications between a company's attorney and that company's employees." *Clapp v. Mueller Elec. Co.*, 162 Ohio App.3d 810, 2005-Ohio-4410, 835 N.E.2d 757, ¶ 53 (8th Dist.).

**{¶ 22}** Further, attorney-client privilege

> extends not only to top executives, officers and agents of the corporation, but also to middle-level and lower-level employees of the corporation. *In order to fall within the attorney-client privilege, the communications between the attorney and the corporate employees must concern matters within the scope of the employees' corporate duties and the employees need to be aware that the communications were for the purpose of obtaining legal advice.*

(Emphasis added.) *Jacobs v. Equity Trust Co.*, 9th Dist. Lorain No. 20CA011621, 2020-Ohio-6882, ¶ 12, citing *Upjohn Co.* at 394.

{¶ 23} In the instant matter, the communications sought by Hudson certainly concern matters within the scope of his and Joyce's duties. Joyce, as chief, and Hudson, as a lieutenant, were among the higher-level employees that would be responsible for implementing the policies and changes recommended by Tucker Ellis. In addition, Hudson does not argue that he and Joyce were unaware that the communications were for the purpose of legal advice.

{¶ 24} Moreover, contrary to Hudson's argument, the reasoning behind the disclosure does not appear to have any bearing on whether or not the communications were privileged. The test is simply whether the communications concerned matters within the employee's duties and that the employee was aware the communications were for the purpose of legal advice. *See id.* The disclosure of the report to Joyce and Hudson therefore fell within the parameters of *Upjohn Co.*, and attorney-client privilege remained intact. Hudson's argument that attorney-client privilege was waived based upon the disclosure of the report to himself and Joyce is without merit.

### 2. *Faragher/Ellerth* Defense

{¶ 25} Hudson further contends that any applicable privilege was waived when GCRTA asserted the *Faragher/Ellerth* defense in the EEOC proceedings. This defense allows an employer to "'mitigate or avoid liability by showing (1) that it exercised reasonable care to prevent and promptly correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided.'" *Diemer v. Minute Men, Inc.*, 2018-

Ohio-1290, 110 N.E.3d 152, ¶ 30 (8th Dist.), quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 133 S.Ct. 2434, 186 L.Ed.2d 565 (2013), citing *Faragher v. Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

{¶ 26} Hudson argues that GCRTA's use of the *Faragher/Ellerth* defense waives any privilege attaching to the investigation of Hudson's claims. Hudson is correct in his assertion that the use of the *Faragher/Ellerth* defense has been held to constitute a waiver of attorney-client privilege; however, this holding has been in cases where the defense is actually being asserted in the litigation itself. It has not been used in a case such as this, where a writ of mandamus was sought after a public-records request was denied. Simply because the entity that is denying the public-records request on the grounds of privilege may have raised the *Faragher/Ellerth* defense in a prior legal proceeding does not mean that the privilege is waived in all other actions. We decline to extend the use of the *Faragher/Ellerth* defense as grounds for waiving privilege to an action for mandamus that is entirely separate from any proceeding in which the merits of harassment or discrimination claims are being litigated and defended.

{¶ 27} Accordingly, for all of the above reasons, GCRTA has not waived privilege and the records sought are excepted from disclosure under Ohio's Public Records Act. Summary judgment was properly granted in favor of GCRTA.

## D. Work-Product Doctrine

{¶ 28} Finally, based upon our determination that attorney-client privilege was not waived as to the records sought by Hudson, we need not consider, as an alternative basis for summary judgment, GCRTA's assertion that the records were protected by the work-product doctrine.

## III. Conclusion

{¶ 29} GCRTA did not waive attorney-client privilege by disclosing the report to Hudson and Joyce. The records sought by Hudson in his public-records request were therefore excepted from disclosure under Ohio's Public Records Act, and the trial court properly granted summary judgment in favor of GCRTA. Hudson's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR